## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| TRACY HARRIS, on behalf of | ) | Case No.: |
| himself, and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERIGROUP CORPORATION, a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT
## FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT

Plaintiff Tracy Harris ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Amerigroup Corporation ("Amerigroup" or "Defendant") to stop Defendant's practice of sending unsolicited text messages to the cellular telephones of individuals and to obtain redress for all persons injured by its conduct.  Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant Amerigroup is a health insurance and managed health care provider. Defendant Amerigroup is the wholly owned subsidiary of Anthem, Inc.

2.      Defendant Amerigroup provides insurance coverage for millions seniors, people with disabilities, low-income families and other state and federally sponsored beneficiaries, and federal employees, making it the nation's largest provider of health care for public programs. Defendant Amerigroup operates in Washington, Nevada, Texas, Kansas, Iowa, Louisiana, Tennessee, Georgia, Florida, Maryland and New Jersey.

3.	In an effort to solicit and generate new business and profits, Defendant Amerigroup repeatedly sent (or directed to be sent on its behalf) unsolicited text messages, without consent, to cellular telephone while using automatic telephone dialing equipment having the capacity to store and dial telephone numbers, *en masse*. As a result, Defendant has repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.	The TCPA was enacted to protect consumers from unauthorized and repeated calls exactly like those alleged in this Complaint – autodialed text messages to cellphone numbers, placed without consent, and continued even after receiving requests to stop.

5.	Defendant's violations caused Plaintiff and the members of the putative Class of consumers (defined below) to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text messages.

6.	In response to Defendant's unlawful conduct, Plaintiff brings the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited text messaging, as well as an award of actual and statutory damages to the members of the putative Class, together with costs and reasonably attorneys' fees.

## JURISDICTION AND VENUE

7.	This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005). Subject matter jurisdiction over this action is further appropriate in this Court pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different than Defendant, (ii) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

8.	The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District.

2

9.      Personal jurisdiction over Defendant is also proper in this District because Defendant, at all times herein mentioned, was doing business in the County of Palm Beach, State of Florida, and a substantial part of the events giving rise to the claim, mainly Plaintiff's receipt of the text messages, occurred in this jurisdiction.   Venue is additionally proper because Plaintiff resides within this District.

## PARTIES

10.      Plaintiff Tracy Harris is, and at all times mentioned was, a resident of the State of Florida, County of Palm Beach. He is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

11.      Defendant Amerigroup Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 4425 Corporation Lane, Virginia Beach, Virginia 23462.   Amerigroup is a "person" as defined by 47 U.S.C. § 153 (39).   Amerigroup regularly does business throughout the State of Florida and in this District.

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA")

## 47 U.S.C. §§ 227 *et seq.*

12.      In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), [1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.      The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."   Specifically, the plain language of section 227(b)(1)(A)(iii)

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

3

prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. [2]

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. [3]

15.     The Ninth Circuit has noted that "[e]xpress consent is "[c]onsent that is clearly and unmistakably stated.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946,955 (9th Cir. 2009).

16.     As of October 16, 2013, the FCC concluded that the form of "express consent" required under § 227(b)(1) would thereafter be "prior express written consent" that is signed and is "sufficient to show that the consumer: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent . . .; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number that consumer designates."[4]

17.     On July 10, 2015 the FCC released a Declaratory Ruling wherein it was confirmed that even if a consumer originally did provide "prior express consent" that caller has a right to revoke consent, using any reasonable method, including orally or in writing. [5]   However, even before the FCC Order that consent to receive a text message could be revoked, the Mobile

---

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

[5] *In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 15-72 (FCC July 10, 2015) available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (last visited on April 18, 2016)

Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program…" and "… if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code."

18.     A text message is a call under the TCPA.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

19.     One of the newest types of bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

20.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS or "text" message call is successfully made, the recipient's cell phone rings or otherwise notes the receipt of the text message, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

21.     Unlike more conventional advertisements, such text messages actually cost its recipients money, because cell phone users must frequently pay their wireless service providers either for each text message call they receive or incur an usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

22.     Amerigroup is one of the nation's largest  health insurance and managed health care providers.  Faced with the prospect of generating new business and revenues, Amerigroup routinely engages in mass communication practices.

23.     Unfortunately, Amerigroup often sends – or has sent on its behalf – solicitation text messages without having the necessary prior express consent to do so, and it fails to honor requests to stop, all in violation of the TCPA.

24.     Amerigroup sends these text messages using equipment that has the capacity to store or produce telephone numbers, and to dial such numbers, *en masse*, without human intervention.

25.     The TCPA was intended to give individuals control over how and where they receive calls and text messages. When Amerigroup sends text messages to individuals without their consent, it fails to address or respect the limitations imposed by the TCPA. In doing so, it takes control away from consumers and violates both the spirit and the letter of the TCPA.

26.     Beginning around at least May 2015, although Plaintiff never provided Amerigroup with his cellular number or consent to contact him on his cellular number, Plaintiff began receiving unsolicited advertisement text messages from Amerigroup, attempting to solicit new business from Plaintiff.

27.     Specifically, Plaintiff received approximately twelve (12) or more unsolicited advertising text messages from Defendant.  The text messages were sent with a frequency of approximately two per week, usually occurring on Tuesdays and Thursdays.  Each of the advertising text messages was generic in nature and did not specifically reference Plaintiff by name.   The texts were pitching Amerigroup related services, price quotes, and savings.

28.     Defendant sent these text messages (or caused them to be sent) to Plaintiff and thousands of members of the putative Class using equipment having the capacity to store or produce telephone numbers to be called and to dial such numbers, *en masse*, simultaneously and without human intervention.

29.     In response to these unsolicited text messages, Plaintiff specifically called Defendant and requested that it remove Plaintiff from its text messaging lists, informed the Defendant he was not interested in the services, and expressly requested that Defendant stop texting him.  Despite these clear requests to stop, Plaintiff continued to receive the unsolicited text messages.

30.     Moreover, Plaintiff has never done business with Amerigroup, been a client or customer of Amerigroup, and has never provided his cellphone number to Amerigroup.

31.     Plaintiff has also never provided a signed writing or otherwise expressly consented in a clear and conspicuous manner to receive solicitation text messages from Defendant.

32.     The telephone number that Defendant, or its agents, texted was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming text messages pursuant to 47 U.S.C. § 227 (b)(1).

33.     These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

34.     Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A) and/or has revoked any alleged prior express consent.

35.     These text message calls by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

36.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and on behalf of and all others similarly situated ("the Class"). Plaintiff represents, and is a member of the Class, consisting of:

All persons within the United States who: (1) received a text message sent by or on behalf of Defendant; (2) at his or her cellular telephone number; (3) soliciting new business; (4) within four years prior to the filing of this Complaint through the date of preliminary approval.

Defendant and its employees or agents are excluded from the Class.

38.     Plaintiff does not know the number of members in the Class, but believes the Class members number in the tens, or even hundreds, of thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

39.     Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by sending unsolicited text messages, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members.  Plaintiff and the Class members were damaged thereby.

40.     This suit seeks only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted and as facts are learned in further investigation and discovery.

41.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

42.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

     a. Whether, within the four years prior to the filing of this Complaint through the date of preliminary approval, Defendant or its agents sent or caused to be sent text messages without the recipients' prior express consent (other than a text messages sent for emergency purposes or made with the prior express consent

of the called party) to a Class member using any automatic telephone dialing system, to any telephone number assigned to a cellular telephone service;

b. Whether the equipment Defendant, or its agents, used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

c. Whether Defendant, or its agents, systematically sent text messages to persons who did not previously provide Defendant with their prior express consent to receive such telephone calls;

d. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

43.     As a person that received at least one unsolicited text message to his cell phone without Plaintiff's prior express contest, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

44.     Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

45.     Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

46.     A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  Class-wide damages are essential to induce Defendant to comply with federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum

statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

47.     Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**COUNT 1**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. §§ 227 ET SEQ.**

48.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49.     Defendant and/or its agent sent unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

50.     Defendant sent these calls, or had them sent on its behalf, using equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, *en masse.*

51.     By using such equipment, Defendant or its agents were able to effectively make thousands of calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

52.     The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one

of the above-cited provisions of 47 U.S.C. § 227 *et seq*.  As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual harm, including violations of statutory rights, invasion of privacy, and monies paid or lost as a result of receiving unsolicited calls.

53.     As a result of Defendant's and Defendant's agents' negligent violations of 47 U.S.C. § 227 *et seq*., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

54.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT 2
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
## 47 U.S.C. §§ 227 ET SEQ.

55.     Plaintiff incorporates by reference paragraphs 1-47 of this Complaint as though fully stated herein.

56.     Defendant and/or its agent sent unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

57.     Defendant sent these calls, or had them sent on its behalf, using equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, *en masse*.

58.     By using such equipment, Defendant or its agents were able to effectively make thousands of calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

59.     The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.  As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual harm, including violations of statutory rights, invasion of privacy, and monies paid or lost as a result of receiving unsolicited calls.

60. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

61. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of this Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff Tracy Harris as the representative of the Class, and appointing his counsel as Class Counsel;

B. An award of actual and statutory damages, as a result of Defendant's and Defendant's agents' negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B), and as a result of Defendant's and Defendant's agents' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

C. An order declaring that Defendant's actions, as set out above, violate the TCPA;

D. A declaratory judgment that Defendant's telephone calling equipment constitutes an automated telephone dialing system under the TCPA;

E. An injunction requiring Defendant to cease all unsolicited text message activities, and otherwise protecting the interests of the Class;

F. An award of reasonable attorneys' fees and costs; and

G. Any other relief the Court may deem reasonable, just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the sending of text messages, the events described herein, any third party associated with any text message, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Dated:  October 12, 2016

**KOMLOSSY LAW P.A.**

/s/ Emily C.  Komlossy
Emily C. Komlossy (FBN 7714)
eck@komlossylaw.com
Ross A. Appel (FBN 90865)
raa@komlossylaw.com
4700 Sheridan Street, Suite J
Hollywood, FL 33021
Telephone:  954-842-2021
Fax: 954-416-6223

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron (pro hac vice to be filed)
ron@consumersadvocates.com
Kas L. Gallucci (pro hac vice to be field )
kas@consumersadvocates.com
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006

Fax: (619) 564-6665

**LAW OFFICE OF ROBERT L. TEEL**
Robert L. Teel (pro hac vice to be filed)
*lawoffice@rlteel.com*
207 Anthes Ave, Suite 201
Langley, Washington 98260
Telephone: (866) 833-5529
Facsimile: (855) 609-6911

*Attorneys for Plaintiff Harris and
the Putative Class*